IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SERVI-TECH, INC.,

    *Plaintiff,*

vs.

    Case No. 17-01148-EFM-JPO

DILLAN OLSON,

    *Defendant.*

**MEMORANDUM AND ORDER**

Plaintiff Servi-Tech, Inc. requested that the Court enter a preliminary injunction to prevent alleged violations of the restrictive covenants contained in Defendant Dillan Olson's employment agreement with Servi-Tech pending resolution of this suit. The Court held a hearing on the motion on August 17, 2017. After reviewing the parties' arguments and the evidence, the Court grants Servi-Tech's Motion for Preliminary Injunction (Doc. 6) to the extent set forth below.

**I.    Facts and Procedural Background**

Servi-Tech hired Olson on August 21, 2014. As a condition of employment, Servi-Tech and Olson entered into an employment agreement that contained a number of restrictive covenants and related provisions. The relevant provisions read as follows:

5. No competition. During his employment, EMPLOYEE shall not directly or indirectly compete, or assist any person who competes, or participates in the ownership, management or operation of any partnership, corporation or other entity operating a business that directly or incidentally provides any crop consulting, laboratory testing or related services similar to those provided by SERVI-TECH. EMPLOYEE agrees that for a period of twenty-four (24) months after the termination of employment with SERVI-TECH, EMPLOYEE will not, directly or indirectly, engage in, or in any manner be connected with or employed by any person, firm, corporation, or other entity that directly or incidentally provides any crop consulting, laboratory testing or related services similar to those provided by SERVI-TECH within a 50 mile radius from the location of any customer with whom EMPLOYEE had "personal contact" within two (2) years prior to EMPLOYEE's termination of employment with SERVI-TECH. For purposes of this Agreement, "personal contact" is defined to include any and all forms of personal interaction or communication, including face-to-face, telephone, correspondence, electronic communication (i.e. email, social media, etc.) or other means by which information is conveyed or exchanged between EMPLOYEE and an actual or prospective customer.

6. No solicitation. EMPLOYEE agrees that for a period of twenty-four (24) months after the termination of his employment with SERVI-TECH, EMPLOYEE will not . . . call on any of the customers of SERVI-TECH with whom EMPLOYEE had personal contact within two (2) years prior to EMPLOYEE's termination of employment with SERVI-TECH, for the purpose of soliciting or providing any agricultural crop consulting, laboratory testing or related services, nor will he in any way, directly or indirectly, for himself or on behalf of any other person, firm, corporation or other entity, solicit, divert or take away any such customers of SERVI-TECH.

7. Extension of Restrictive Period. EMPLOYEE acknowledges that the purposes of this agreement would be frustrated by measuring the period of restriction from the date of termination of employment in the event EMPLOYEE fails to honor the agreement until directed to do so by court order, or for any other reason. Therefore, should SERVI-TECH be required to bring legal proceedings against EMPLOYEE to enforce this agreement, the period of restriction under Sections 5 and 6 shall be deemed to begin running on the date of the entry of the court order granting SERVI-TECH injunctive relief. This period shall be tolled during any time EMPLOYEE violates this provision or violates any court order granting injunctive relief.

8. Confidential information. EMPLOYEE agrees that he will not communicate to any person, firm, corporation or other entity any information relating to trade secrets, customer lists, prices, advertising, business practices or any other knowledge or information that EMPLOYEE may from time to time acquire with respect to the business of SERVI-TECH. All such information or knowledge

> shall be kept confidential by EMPLOYEE. Upon termination of employment, EMPLOYEE shall immediately turn over to SERVI-TECH all documents, papers, customers lists, memoranda, computer programs, computer files, any electronic or digital media, and any other material containing information relating to SERVI-TECH'S business.

When Olson started working, he had approximately 10 clients assigned to him by Servi-Tech. His role in servicing these clients included facilitating soil sampling, visiting the clients' crop fields, making herbicide and chemical application recommendations, making recommendations on what to plant and when, and scouting the clients' fields during the growing season on a weekly basis to check for crop disease and insect issues (collectively referred to as "crop consulting services"). During his employment, Olson's client list grew to a total of 18. Of these eight new clients, five came to Servi-Tech because they were family, friends, acquaintances or business contacts of Olson. These clients are: (1) Myles Berthlesen; (2) Matthew Grosshans; (3) Barry and Gabe Dietrich of Dietrich Farms; (4) Curren Vetter; and (5) Sam Anderson (collectively referred to as "Olson's five prior contacts").

Servi-Tech terminated Olson's employment on September 30, 2016. Shortly thereafter, Olson commenced employment with Diamond Ag, one of Servi-Tech's customers. Because Diamond Ag provides different services than Servi-Tech does, Servi-Tech has stated that Olson's employment with Diamond Ag is not currently in violation of his employee agreement. However, in mid-November, Olson began performing crop consulting services on his own through an entity he established known as Platinum Agronomy Solutions, LLC ("Platinum"). Olson's five prior contacts then left Servi-Tech and became clients of Platinum.

Servi-Tech sent Olson a demand letter on November 23, 2016, and again on December 2, demanding his compliance with his non-compete and non-solicitation obligations. Apparently unsatisfied with Olson's response to the demand letters, Servi-Tech filed this current action

against Olson on June 22, 2017. On July 24, Servi-Tech filed this present motion seeking a preliminary injunction to prevent Olson from continuing the activities that allegedly violate the contractual restrictions.

## II. Legal Standard

"As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."[1] The purpose of a preliminary injunction is "to preserve the status quo pending the outcome of the case."[2] Whether to grant or deny a preliminary injunction rests within the discretion of the district court.[3]

To be entitled to a preliminary injunction, the moving party must demonstrate: (1) that the movant will suffer irreparable injury unless the injunction issues; (2) that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing parties; (3) that the injunction, if issued, would not be adverse to the public interest; and (4) that there is a substantial likelihood that the movant will eventually prevail on the merits.[4]

## III. Discussion

As an initial matter, Olson argues that Servi-Tech does not have a substantial likelihood of success on the merits because the non-compete and non-solicitation provisions are unenforceable under Nebraska law. In making this argument, Olson points out that in diversity

---

[1] *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *SCFC ILC, Inc. v. Visa USA Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)).

[2] *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986)).

[3] *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).

[4] *Schrier*, 427 F.3d at 1258; *see also Resolution Trust Corp. v. Cruce*, 783 F. Supp. 1309, 1310–11 (D. Kan. 1992).

cases, district courts generally apply the substantive law, including the choice-of-law rules, of the forum state. "Under Kansas choice-of-law rules, the *lex loci contractus* doctrine requires the Court to apply the law of the state where the contract is made."[5] In this case, the contract was made in Nebraska, so Olson asserts that Nebraska law should apply.

However, *lex loci contractus* is not the sole Kansas choice-of-law rule. When a contract incorporates a choice of law provision, Kansas courts effectuate the law chosen by the parties to control the agreement.[6] Here, the employment agreement contained a choice of law provision indicating that the parties agreed to apply Kansas law. Accordingly, Kansas law will govern this dispute.

**A.     Irreparable Harm to Servi-Tech**

Servi-Tech has demonstrated that, unless an injunction is issued, Servi-Tech will suffer irreparable harm. Although Olson claims that his five prior contacts only came to Servi-Tech because of their relationship with Olson, they still became Servi-Tech's clients—not Olson's. Once they became Servi-Tech's clients, Servi-Tech was entitled to the benefits from doing business with them. Not only does this include the direct and obvious benefits of having customers, but also includes future opportunities derived from the customers, such as referrals that lead to other new customers. Therefore, these losses are not merely economic, and cannot be simply remedied with monetary damages.

As Olson points out, Servi-Tech did not actually seek an injunction until nearly ten months after Olson was fired, suggesting that Servi-Tech was not being significantly harmed by

---

[5] *Sylvia v. Wisler*, 2015 WL 6454794, at *2 (D. Kan. 2015).

[6] *Brenner v. Oppenheimer & Co.*, 273 Kan. 525, 44 P.3d 364, 375 (2002); *see also Equifax Servs., Inc. v. Hitz*, 1992 WL 163282, at *4 (10th Cir. 1992) (explaining that the Kansas Supreme Court will adhere to the *lex loci contractus* doctrine unless there is a contractual choice-of-law provision).

Olson. However, Servi-Tech did seek to protect its rights informally much sooner. Servi-Tech sent Olson a demand letter on November 23, 2016, and again on December 2, demanding his compliance with his non-compete and non-solicitation obligations. This correspondence occurred very shortly after Olson began performing crop consulting services with Platinum. Servi-Tech did wait another six months after the second demand letter to file this action, but Servi-Tech indicated that they received some assurances from Olson after the demand letters that he was not performing crop consulting services. Servi-Tech filed suit shortly after Olson was allegedly spotted "scouting" in a field in violation of the "no competition" covenant. Therefore, the Court concludes that Servi-Tech was not entirely "sleeping" on its rights, and Servi-Tech has sufficiently demonstrated irreparable harm.

**B.**     **Balance of Harms**

In balancing the harms, it is apparent that granting the injunction as originally sought by Servi-Tech would cause considerable harm to Olson. The "no competition" clause in Olson's employment agreement places a twenty-four month restriction on Olson's ability to perform crop consulting services within fifty miles of any customer *or prospective customer* with whom Olson had personal contact within two years before he left Servi-Tech. The "no solicitation" clause places a twenty-four month restriction on Olson's ability to contact any customers with whom he had personal contact during his last two years at Servi-Tech. And Paragraph 7 of the employment agreement extends the duration of these restrictions, deeming twenty-four month period to not begin running until the date of the entry of this Court's order granting Servi-Tech injunctive relief.

Covenants not to compete are narrowly construed under Kansas law.[7] "Courts construe such covenants against the employer because the employee is in a weaker bargaining position when the two parties form the employment agreement."[8] A covenant not to compete is valid and enforceable only if its restraint is reasonable.[9] "A restraint is reasonable only insofar as it is justified by the need to protect a legitimate business interest."[10] "If the sole purpose is to avoid ordinary competition, it is unreasonable and unenforceable."[11]

Olson received some special crop consulting and agronomy training from Servi-Tech, so Servi-Tech has a legitimate business interest to enforce the non-competition clause to protect its investment in him. This, coupled with Servi-Tech's interest of not losing customers, justifies the non-solicitation provision in Paragraph 6 that prevents Olson from contacting customers he had worked with as a Servi-Tech employee.

However, Servi-Tech was on notice from Judge Marten's 2013 decision in *Servi-Tech v. Schmidt* that the "no competition" clause's geographic scope is unreasonably broad and not justified by a legitimate business interest.[12] In fact, the geographic scope at issue here is even broader than the geographic scope at issue in *Schmidt*. The clause restrains Olson for two years from competing with Servi-Tech anywhere within a fifty-mile radius around every customer and prospective customer with whom Olson had personal contact. This covenant is unrelated to the

---

[7] *Weber v. Tillman*, 259 Kan. 457, 913 P.2d 84, 89 (1996).

[8] *Servi-Tech, Inc. v. Schmidt*, 2013 WL 12106876, at *2 (D. Kan. 2013) (citing *Safelite Glass Corp. v. Fuller*, 15 Kan. App. 2d 351, 807 P.2d 677, 682 (1991)).

[9] *Weber*, 913 P.2d at 89.

[10] *Schmidt*, 2013 WL 12106876, at *2 (citing *Weber*, 913 P.2d at 89).

[11] *Weber*, 913 P.2d at 89.

[12] *See Schmidt*, 2013 WL 12106876, at *3 ("The 'no competition' clause's geographic scope, however, is unreasonably broad and is not justified by a legitimate business interest.").

protection of Servi-Tech's legitimate business interests and serves only to delineate broad areas where Servi-Tech is isolated from competition. Therefore, it exceeds a reasonable scope and the Court will not enforce Paragraph 5—the "no competition" clause—due to its unreasonable scope.

Next, the restrictive period of 24 months from the date of termination, as contained in the "no solicitation" clause is reasonable.[13] However, Paragraph 7—which would extend the restrictive period for a period of 24 months from the date of this Order—exceeds a reasonable scope. Unlike the 24 month restrictive period itself, which as noted is common, this method of calculating the time period is most uncommon. The Court finds it particularly excessive on the facts of this case, where this action was not filed for nearly nine months following Olson's separation from Servi-Tech's service. Accordingly, the Court will not enforce Paragraph 7 either.

In sum, the harm to Olson will be minimal if the Court enforces the "no solicitation" clause and only enforces this provision for a period of 24 months from Olson's termination. He would be restricted from contacting former customers he had worked with at Servi-Tech— including his five prior contacts—but he would be free to contact any other potential customers for his new company. As the Court mentioned above, the harm to Servi-Tech (lost customer relationships) will be great if the Court does not issue an injunction.[14] These harms balance in favor of issuing the injunction.

---

[13] *See Bruce D. Graham, M.D., P.A. v. Cirocco*, 31 Kan. App. 2d 563, 69 P.3d 194, 199 (2003) ("We are not bothered by this covenant's 2-year restriction. Such a time period is common in Kansas noncompetition clause cases.").

[14] While not addressed by the parties, Servi-Tech has a legitimate business interest in protecting its confidential information. *See Weber*, 913 P.2d at 91 (explaining that an employer has a legitimate business interest in protecting trade secrets and confidential information). The Court will therefore enforce Paragraph 8 as well.

C.  **Public Interest**

While the parties largely neglected to address this factor in their written or oral arguments, there is a substantial public interest in upholding contracts.[15] "The somewhat anti-competitive nature of the restrictions on [Olson's] contact with Servi-Tech's customers does not outweigh this interest, especially considering that [Olson] signed the contract agreeing to these restrictions."[16] Therefore, the public interest weighs in favor of issuing the injunction.

D.  **Likelihood of Success on the Merits**

Under Kansas law, to establish likelihood of success on a claim for breach of a non-compete or non-solicitation contract, Servi-Tech must show: (1) the existence of a contract; (2) sufficient consideration to support the contract; (3) Servi-Tech's performance of willingness to perform in compliance with the contract; (4) Olson's breach of the contract; and (5) damages to Servi-Tech caused by the breach. The only element at issue here is whether Olson breached the contract. Olson contends that there was no breach because the employment agreement contains unreasonable geographical and time restrictions.

However, Servi-Tech is, at a minimum, able to demonstrate breach of the non-solicitation covenant which contains a reasonable two-year time restriction. "Kansas courts have routinely recognized the validity of covenants not to compete ancillary to an employment contract if the covenant is reasonable and not adverse to the public interest."[17] The Court has already determined that the "no solicitation" clause is not adverse to the public interest. And under

---

[15] *See, e.g.*, *Am. Fid. Assurance Corp. v. Leonard*, 81 F. Supp. 2d 1115, 1121 (D. Kan. 2000) (concluding that the public has an interest in upholding valid and enforceable contracts, and preventing unfair competition).

[16] *Schmidt*, 2013 WL 12106876, at *3.

[17] *Universal Engraving, Inc. v. Duarte*, 519 F. Supp. 2d 1140, 1151 (D. Kan. 2007) (citing *Idbeis v. Wichita Surgical Specialists, P.A.*, 279 Kan. 755, 112 P.3d 81, 86–87 (2005); *Varney Bus. Servs., Inc. v. Pottroff*, 275 Kan. 20, 59 P.3d 1003, 1014–15 (2002)).

Kansas law, the provision is also reasonable.[18] Therefore, Servi-Tech has demonstrated a substantial likelihood of success on the merits of its claim to the extent that it seeks to enforce the "no solicitation" clause.

## IV. Bond Pursuant to Rule 65

"The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[19] At the hearing, Servi-Tech offered no evidence pertaining to the revenue Olson brought in while working for Servi-Tech. But Servi-Tech has represented to this Court that at least $75,000 is at stake, otherwise this Court would lack subject matter jurisdiction. Accordingly, the Court considers $75,000 a proper estimate of the costs and damages Olson would sustain should the injunction be found wrongful. Therefore, the Court orders Servi-Tech to give security in this amount.

## V. Conclusion

Servi-Tech meets the requirements for a preliminary injunction. However, the Court holds that the "no competition" clause is too broad in scope and does not enforce it. The "no solicitation" clause is reasonable and justified by a legitimate business interest, and therefore it is enforceable. As a result of this preliminary injunction, Olson is prohibited from contacting customers in violation of the "no solicitation" clause of his employment agreement with Servi-Tech. This includes Olson's five prior contacts. Additionally, the Court is not enforcing Paragraph 7, so the duration of the restrictions will be deemed to run for two years from the date

---

[18] *See, e.g.*, *Cirocco*, 69 P.3d at 200 (concluding that two-year, 150-mile restriction on solicitation of employer's clients was reasonable, because it did not operate as a complete ban on performing services).

[19] Fed. R. Civ. P. 65(c).

Olson's employment was terminated. And finally, Paragraph 8 is a valid restriction and will be enforced as well.

**IT IS THEREFORE ORDERED** that Servi-Tech's Motion for Preliminary Injunction (Doc. 6) is **GRANTED** to the extent set forth above.

**IT IS FURTHER ORDERED** that Servi-Tech give security in the amount of $75,000. Payment may be made to any of the three (3) Federal Court Clerk's Offices in Kansas. Plaintiff should either include a copy of this order with payment or designate the case number with the payment.

**IT IS SO ORDERED.**

Dated this 1st day of September, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE